FILED

Robert S. Coldren, Esq., Bar No. 81710
Mark D. Alpert, Esq., Bar No. 138152
HART, KING & COLDREN
A PROFESSIONAL LAW CORPORATION
200 Sandpointe, Fourth Floor
Santa Ana, California 92707
Telephone: (714) 432-8700
Facsimile:  (714) 546-7457

2011 DEC 19  PM 3: 57

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY:_____

Attorneys for Plaintiff,
EL DORADO ESTATES, a California Limited Partnership

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EL DORADO ESTATES, a California Limited Partnership,<br><br>      Plaintiff,<br><br>    v.<br><br>CITY OF FILLMORE, a California Municipal Corporation and DOES 1-30<br><br>      Defendants. | Case No.:  CV11-7562 SJO (RZx)<br><br>Judge:     Hon. S. James Otero<br>Ctrm:     1<br><br>Discovery Magistrate<br>Judge:  Ralph Zarefsky<br><br>**FIRST AMENDED COMPLAINT FOR VIOLATION OF THE FEDERAL FAIR HOUSING AMENDMENTS ACT OF 1988, DECLARATORY JUDGMENT, PERMANENT INJUNCTIVE RELIEF, DAMAGES AND PENALTIES, ATTORNEYS FEES AND COSTS**<br><br>**REQUEST FOR JURY TRIAL** |

HART, KING & COLDREN
A PROFESSIONAL LAW CORPORATION
200 SANDPOINTE, FOURTH FLOOR
SANTA ANA, CALIFORNIA 92707

*FIRST AMENDED COMPLAINT*

### Nature Of The Complaint

1.      This is an action for declaratory judgment, permanent injunctive relief, damages, civil penalties and fines, costs, and attorneys' fees, based on a continuing intentional pattern of familial discriminatory conduct.  This action arises under the Fair Housing Act of 1968, as amended, 42 U.S.C. §§ 3601-19, and 42 U.S.C. § 3631.

### Jurisdiction And Venue

2.      Jurisdiction is conferred on this Court by 42 U.S.C. § 3613(a), 28 U.S.C. § 1331, 28 U.S.C. § 1343, and 28 U.S.C. § 2201.

3.      Venue is proper in this district pursuant to 28 U.S.C. § 1391 (b) and (c) because the claims arose in the Fillmore, California and the defendant conducts business in Fillmore California, in Ventura County.

### Parties

4.      Plaintiff El Dorado Estates ("El Dorado") is a California limited partnership that owns land upon which tenant-owned manufactured homes are placed. El Dorado is licensed to do business in the State of California and to operate as a mobilehome community.  El Dorado owns in fee simple and operates the El Dorado Mobile Estates Mobile Home Park ("the Park") located at 250 E. Telegraph Road, Fillmore, CA.

5.      Defendant City Fillmore ("City") is a California municipal corporation located in Ventura County, California.  The City derives its corporate powers from the California Legislature pursuant to Article XI, Section 2 of the State Constitution.  At all times relevant hereto, City acted with the consent of, and under the control or supervision of elected officials and employees.

6.      El Dorado is informed and believes, and thereon alleges, that each of the Defendants named herein as Does 1 through 30, inclusive, were and are in some manner responsible for the acts, omissions and actions as hereafter alleged and are, therefore, jointly and severally liable for and all damages or harm caused to El Dorado.  El Dorado is informed and believes that Does 1 through 30, or some of them,

HART, KING & COLDREN
A PROFESSIONAL LAW CORPORATION
200 SANDPOINTE, FOURTH FLOOR
SANTA ANA, CALIFORNIA 92707

*FIRST AMENDED COMPLAINT*

1   participated with, encouraged or conspired to undertake the actions which are the

2   subject of this lawsuit.

3         7.    El Dorado is informed and believes, and thereon alleges, that at all times

4   herein mentioned the Defendants, and each of them, including the fictitiously named

5   Defendants, were the agents, employees or officers of each of the remaining

6   Defendants, and, in doing the things hereafter alleged, were acting within the scope,

7   course and purpose said agency or employment, and were acting within the apparent

8   scope of said agency, employment and position and acted with the permission and

9   consent of each of the remaining defendants.

10  ## Background

11        8.    El Dorado owns and operates a 302 space senior mobilehome park

12  known as El Dorado Estates Mobile Home Park ("Park") located in Defendant City of

13  Fillmore.  The City has a total population of approximately 15,000 people.  As a

14  result, the Park represents a substantial block of senior voters, perhaps the largest

15  block of votes in the City.

16        9.    In or about January 2008, the City began considering adoption of a

17  mobile home rent control ordinance at the insistence of a vocal group of residents in

18  the Park.  In 2008, the Park owner publicly discussed one response to the adoption of

19  rent control might be changing the park from a senior park to an "all age" park.  El

20  Dorado has the right to make such a change under the California Mobilehome

21  Residency Act (California Civil Code § 798 et seq) by a rule change, without the

22  permission of the City or the residents of the Park. (Id § 798.25)

23        10.    El Dorado determined that the prudent course to take was to subdivide

24  the Park to allow an "exit strategy" from operating the business of a rental mobile

25  home park.  A subdivision would allow El Dorado to divide the single lot into

26  separate lots to be sold to residents.

27        11.    California Government Code Section 66427.5 governs the processing of

28  subdivision conversions for mobile home parks in California.  It creates a ministerial

HART, KING & COLDREN
A PROFESSIONAL LAW CORPORATION
200 SANDPOINTE, FOURTH FLOOR
SANTA ANA, CALIFORNIA 92707

*FIRST AMENDED COMPLAINT*

25383.373/4850-7535-0798v.1

HART, KING & COLDREN
A PROFESSIONAL LAW CORPORATION
200 SANDPOINTE, FOURTH FLOOR
SANTA ANA, CALIFORNIA 92707

role for local governments, specifying that local governments consideration such conversions may only consider whether the park owner has complied with Gov't Code § 66427.5 in considering an application for conversion. (See *Sequoia Park Associates v. County of Sonoma*, 176 Cal.App.4th 1270 (Cal.App.1st Dist. 2009)).

12.  In March 2009, El Dorado submitted a vesting tentative map application which provided the City all of the information necessary to process the map and conversion pursuant to the requirements and limitations of Government Code § 66427.5.   However, rather than complying with state law, the City deemed the application incomplete in a letter of April 1, 2009.  Beginning with a letter of April 1, 2009, City planning staff made a series of evolving demands it claimed were necessary to "complete" the application.  These demands disregarded the limitations of Government Code § 66427.5, misapplied other state laws and the City's own municipal code and the Permit Streamlining Act (Gov't C § 65940).

13.  The residents of the Park were advised of the potential subdivision.  In fact, El Dorado was required to participate in a survey of resident support prior to submitting the Application.  Many residents in the Park opposed subdivision because they feared it would lead the Park being converted from a senior park to an all age park. El Dorado is informed and believes that this concern was regularly expressed to Defendant through its elected and appointed officials and attorneys.

14.  El Dorado is informed and believes that City was processing the Application in this fashion as part of a concerted effort to deny El Dorado its legal right to subdivide and convert the Park to resident ownership in large part because of the concern that the Park would thereafter be converted to all age and that City Staff was and is receiving direction from the City Council and Planning Commission instructing staff regarding how to process the application in a manner inconsistent with state law and, in fact, one or more City Council members has publicly stated support for the manner in which City staff is processing the Application.  In short, the City acted to prevent a legal and valid subdivision application from coming to hearing

*FIRST AMENDED COMPLAINT*

1   and after being forced to hold a hearing, imposed conditions and processed the

2   application with the purpose of preventing the subdivision from occurring.

3       15.     The City's processing of the subdivision application involved repeated

4   efforts to delay, increase the cost, and ultimately, prevent the subdivision. El Dorado

5   initially attempted to address the City's demands in processing, but the City

6   disregarded the limitations of California Government Code 66427.5, seeking to

7   impose dozens of requirements on "completing" the application that would have cost

8   hundreds of thousands of dollars and years to complete, simply to get the application

9   "complete" for hearing. El Dorado was required to file a lawsuit in Ventura Superior

10  Court, Case No. 56-20009-00358555-CU-WM-VTA ("State Action").

11      16.     The State Action initially resulted in a July 9, 2010 Order (the "July 2010

12  Order"), that (1) the City could only determine El Dorado's application completeness

13  with reference to Government Code section 66427.5.  The Court upheld only two

14  technical requirements of the City, resulting in the application being deemed complete

15  shortly thereafter.  On September 30, 2010, the City's Community Development

16  Director Kevin McSweeney determined that the subdivision was exempt from CEQA

17  review as an "existing facility," a categorical exemption under section 15301 of the

18  CEQA Guidelines.

19      17.     On December 14, 2010, the City Council reached a final decision. It

20  approved El Dorado's Application, but despite the Court's order, sought to impose

21  flood mitigation requirements as a condition of the project, based on City Municipal

22  Code requirements.  The  City also included a condition which required the City to

23  conduct an initial study under CEQA, even though the City had already determined

24  the application was exempt from CEQA and the application was approved.  After the

25  public hearing was completed, the City allowed for the administrative record to be

26  augmented weeks after the fact, in order to gather evidence to support the decision

27  that was not part of the original hearing process.

28      18.     Prior, during and after the Planning Commission and City Council

HART, KING & COLDREN
A PROFESSIONAL LAW CORPORATION
200 SANDPOINTE, FOURTH FLOOR
SANTA ANA, CALIFORNIA 92707

4

*FIRST AMENDED COMPLAINT*

hearings, City officials and residents both publicly and privately expressed their concerns that El Dorado intended to convert the park to all age if the subdivision was approved.

19.   El Dorado is informed in believes and on that basis alleges, that the City determined it would take whatever steps it believed it could legally take to delay, impede or deny the subdivision conversion in order to prevent the Park from becoming an "all age" property because of the vocal opposition of existing residents to living in a community that was not limited to seniors.  Defendants revealed their intention to support this discriminatory purpose repeatedly in what they apparently believed were private communications.  For example, in an email of February 8, 2011, City Attorney Schneider advised one of the activists in the Park "Although, if we are successful in Court, and the owner has to comply with CEQA before switching to an all-age park, then she may elect not to do so."  In an email of July 8, 2011, City Council Member Conaway stated to the same resident activist:

> Seriously, who really cares if they "condo" convert the park?  It's really about the age restriction.

20.   In June, 2011, after the City adopted a resolution improperly imposing flood mitigation requirements that were inconsistent with the Court's prior order and containing CEQA conditions, El Dorado sought to engage with the City in settlement discussions, proposing that the City agree to approve the subdivision application with no conditions that are not allowed by Government Code § 66427.5.  In response, the City repeatedly sought an agreement from the Park owner to not change the Park to all age.  El Dorado is informed and believes the City had no genuine concern over environmental impacts of a park rule change which it could not legally regulate, but rather was catering to the demands of the residents who did not want to live in an all age property.  In discussing the settlement proposal, City attorney Charmaine Beuhner stated in an email of June 13, 2011:

> As has been repeatedly stated at Council meetings, the park

HART, KING & COLDREN
A PROFESSIONAL LAW CORPORATION
200 SANDPOINTE, FOURTH FLOOR
SANTA ANA, CALIFORNIA 92707

25383.373/4850-7535-0798v.1

*FIRST AMENDED COMPLAINT*

1    residents are very interested in reassurance from El Dorado that the
2    Park will remain a senior community. I would appreciate
     receiving this information prior to next Tuesday.

3    21.    The City subsequently indicated through its attorneys it would accept the
4    settlement if El Dorado would agree to maintain the park as all age, even after being
5    apprized of El Dorado's position that it was engaging in discriminatory behavior. The
6    City couched its concerns as being based on the residents concerns over
7    environmental issues, but that claim simply was not true. As indicted by Mr.
8    Schneider's email, the environmental concerns and assertion of CEQA were simply a
9    tool designed to prevent the Park from subdividing because the residents believed it
10   would lead to the Park becoming all age. Some senior residents of the Park simply
11   did not want to live in a park with young people and children. The City acted and has
12   continued to act to further that purpose. As Mr. Schneider represented to the residents
13   in an email of February 25, 2011:

14        Thanks for recognizing that we really do have your best interest at
15        heart and are fighting for what is right for the residents. You deserve
          better than the manner in which you've been treated by the owner.
16

17   22.    In other words, the Defendant has no real concern over the potential
18   environmental impacts of a change it the park's status from senior to all age. The City
19   simply wants to serve the desire of the residents to prevent the Park from becoming
20   open to all ages. As a result, the actions of Defendants have led to years of delay in
21   processing and approval of the subdivision application and added tens of thousands of
22   costs to the processing of the application, all resulting from an effort to prevent the
23   Park from becoming all age. The wrongdoing is ongoing, as the State Court is in the
24   process of issuing a writ of mandamus requiring the City to reconsider the application
25   based on the City's prior violation of state law.

26                          **The Federal Fair Housing Act**
27   23.    The Fair Housing Act (Title VIII of the Civil Rights Act of 1968, as
28   amended in 1988, 42 U.S.C. 3601-3619) ("the Act") expressly prohibits

HART, KING & COLDREN
A PROFESSIONAL LAW CORPORATION
200 SANDPOINTE, FOURTH FLOOR
SANTA ANA, CALIFORNIA 92707

25383.373/4850-7535-0798v.1

discrimination in the rental or sale of housing to families with children but exempts "housing for older persons" from the Act's prohibitions against discrimination because of familial status.   Section 807(b)(2)(C) of the Act exempts housing intended and operated for occupancy by persons 55 years of age or older which satisfies certain criteria. The original criteria included that at least 80 percent of the occupied units are occupied by at least one person who is 55 years of age or older and the housing provider intends to operate the property as housing for older persons along with other criteria.

24.   Under the Act, it is unlawful:

(a) To refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin.

(b) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin.

(c) To make, print, or publish, or cause to be made, printed, or published any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on race, color, religion, sex, handicap, familial status, or national origin, or an intention to make any such preference, limitation, or discrimination. . . .

(42 U.S.C. § 3604)

25.   Under § 3617, it is unlawful to " . . . coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected" by sections 3603, 3604, 3605, or 3606 of the Act.

26.   The City its elected officials, and employees are all subject to the Fair Housing Act of 1968, 42 U.S.C. §§ 3601-19, and 42.U.S.C. § 3631.

HART, KING & COLDREN
A PROFESSIONAL LAW CORPORATION
200 SANDPOINTE, FOURTH FLOOR
SANTA ANA, CALIFORNIA 92707

*FIRST AMENDED COMPLAINT*

# FIRST CLAIM FOR RELIEF

## (Against all Defendants for Violation of the Fair Housing Act) (42 U.S.C. § 3604(a) and § 3604(b) (Fair Housing Act: Disparate 13 Treatment)

27.     Paragraphs 1 through 26 are re-alleged and incorporated herein by reference.

28.     As alleged above, Defendants acted with the intent of coercing, interfering with and preventing El Dorado from potentially making housing available for families at the behest of senior residents of the Park who want the Park to remain as senior housing.  The City's actions in making unreasonable and illegal demands in processing the application, imposing illegal and prohibitively costly conditions, seeking to impose environmental review and offering to approve the application if El Dorado would irrevocably commit to keeping the Park a senior park, were all

29.     City's claim that it is genuinely concerned with the environmental impacts of a private decision to change the Park to all age (which is not governed by CEQA) is a pretext, intended only to serve the purposes of preventing the Park from ever becoming all age.  The City's processing of the subdivision application and imposition of conditions on El Dorado, as alleged herein, was undertaken with the intent of preventing families with children from living in the Park.  As a result, the City violated El Dorado's rights under the Fair 23 Housing Act of 1968, as amended, 42 U.S.C. § 3604(a) and (b), with each incident constituting a separate violation.

30.     El Dorado has been injured, damages and deprived of its rights in sums not yet ascertained.  El Dorado will seek leave to amend this complaint to state the actual amount of damage and injury when the same have been ascertained and when City ceases and desists from its continuing, ongoing campaign of wrongful conduct.

31.     City should be required to pay a civil penalty and or punitive damages to the government of the United States for each instance of violation of the Act.

32.     El Dorado has no adequate remedy at law because the abridgment of its federal rights by the City is ongoing and ought not to be inflicted as a matter of public

HART, KING & COLDREN
A PROFESSIONAL LAW CORPORATION
200 SANDPOINTE, FOURTH FLOOR
SANTA ANA, CALIFORNIA 92707

*FIRST AMENDED COMPLAINT*

25383.373/4850-7535-0798v.1

policy and federal law.  The FHA authorizes injunctive relief, and extant monetary remedies available are inadequate to remedy the Act violations, for El Dorado, and the damages to be suffered are therefore irreparable in nature and ongoing.

33.    El Dorado is therefore entitled, in addition to damages and civil penalties, to declaratory, provisional and permanent injunctive relief to require the City to cease and desist from utilizing the potential or any actual change of the Park from senior to all age status as a basis for delaying, denying or imposing conditions on the subdivision application of El Dorado.

34.    El Dorado is entitled to attorney's fees and costs.  Retention of counsel was required for the protection of the rights of El Dorado.

## **PRAYER FOR RELIEF**

1.    Compensatory, General, Special, and Punitive Damages in an amount to make Plaintiff whole, to be determined at trial;

2.    For temporary, provisional and permanent injunctive relief against the consideration or reliance by the City on an actual or potential change from senior to all age status in the processing of the subdivision application of Plaintiff;

3.    For attorney's fees and costs;

4.    For interest at the legal rate; and

5.    For any other and further relief the court considers proper.

Dated:  December 19, 2011

HART, KING & COLDREN

By: _____
Robert S. Coldren
Mark D. Alpert
Attorneys for Plaintiff,
El Dorado Estates

HART, KING & COLDREN
A PROFESSIONAL LAW CORPORATION
200 SANDPOINTE, FOURTH FLOOR
SANTA ANA, CALIFORNIA 92707

9

*FIRST AMENDED COMPLAINT*

# REQUEST FOR JURY TRIAL

Plaintiff El Dorado Estates, a California Limited Partnership hereby requests trial by jury in the foregoing matter.

Dated:  December 19, 2011

HART, KING & COLDREN

By: _____
Robert S. Coldren
Mark D. Alpert
Attorneys for Plaintiff,
El Dorado Estates

HART, KING & COLDREN
A PROFESSIONAL LAW CORPORATION
200 SANDPOINTE, FOURTH FLOOR
SANTA ANA, CALIFORNIA 92707

10

**PROOF OF SERVICE**
*EL DORADO ESTATES v. CITY OF FILLMORE*
Court Case No. 56-2009-00358555

STATE OF CALIFORNIA, COUNTY OF ORANGE

I am employed in the County of Orange, State of California. I am over the age of 18 years and am not a party to the within action. My business address is 200 Sandpointe, Fourth Floor, Santa Ana, California 92707-0507. On December 19, 2011, I caused the foregoing document(s) described as **FIRST AMENDED COMPLAINT FOR VIOLATION OF THE FEDERAL FAIR HOUSING AMENDMENTS ACT OF 1988, DECLARATORY JUDGMENT, PERMANENT INJUNCTIVE RELIEF, DAMAGES AND PENALTIES, ATTORNEYS FEES AND COSTS** to be served on the interested parties in this action as follows:

☒ by placing ☐ the original ☒ a true copy thereof enclosed in sealed envelopes addressed as stated below or ☐ by sending a copy as stated and addressed below:

### *SEE ATTACHED SERVICE LIST*

☐     **BY MAIL:** I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid Santa Ana, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one day after date of deposit for mailing in the affidavit.

☒     **BY OVERNIGHT DELIVERY:** I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the persons identified herein. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

☒     **BY ELECTRONIC SERVICE.** Based on a court order or an agreement of the parties to accept service by electronic transmission, I caused the documents to be sent to the persons at the electronic notification addresses listed herein on this date at 11:50 A.M. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

☐     **BY FACSIMILE:** Based on an agreement of the parties to accept service by fax transmission, I faxed the documents from a fax machine, at Santa Ana, California, with the telephone number, (714) 546-7457 to the parties and/or attorney for the parties at the facsimile transmission number(s) shown herein. The facsimile transmission was reported as complete without error by a transmission report, issued by the facsimile transmission machine upon which the transmission was made, a copy of which is attached hereto.

☐     **BY PERSONAL SERVICE:** I caused the documents to be personally delivered to the persons at the addresses listed herein. (1) For a party represented by an attorney, delivery was made to the attorney or at the attorney's office by leaving the documents, in an envelope or package clearly labeled to identify the attorney being served, with a receptionist or an individual in charge of the office, between the hours of nine in the morning and five in the evening. (2) For a party, delivery was made to the party or by leaving the documents at the party's residence with some person not younger than 18 years of age between the hours of eight in the morning and six in the evening.

☐     **BY MESSENGER SERVICE:** I served the documents by placing them in an envelope or package addressed to the persons at the addresses listed herein and providing them to a professional messenger service for service. A declaration by the messenger will be filed separately.

☒     [State] I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on December 19, 2011, at Santa Ana, California.

Armeda Martinez

HART, KING & COLDREN
A PROFESSIONAL LAW CORPORATION
200 SANDPOINTE, FOURTH FLOOR
SANTA ANA, CALIFORNIA 92707



**SERVICE LIST**
*EL DORADO ESTATES v. CITY OF FILLMORE*
Court Case No. 56-2009-00358555

Theodore J. Schneider, Esq.
Charmaine H. Buehner, Esq
Myers, Widders, Gibson, Jones & Schneider
5425 Everglades Street
Ventura, CA  93003
Tel.: (805) 644-7188
Fax: (805) 644-7390
tschneider@mwgjs.com
cbuehner@mwgjs.com

*Attorneys for Defendant,*
*CITY OF FILLMORE*

HART, KING & COLDREN
A PROFESSIONAL LAW CORPORATION
200 SANDPOINTE, FOURTH FLOOR
SANTA ANA, CALIFORNIA 92707

6383.373/4840-1544-3205v.1

ii

*PROOF OF SERVICE*