JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority ___
Send ___
Enter ___
Closed ___
JS-5/JS-6 ___
Scan Only ___

| | |
|---|---|
| **CASE NO.:** CV 11-07562 SJO (RZx) | **DATE:** March 9, 2012 |
| **TITLE:** El Dorado Estates v. City of Fillmore, et al. | |

========================================================================
**PRESENT:** THE HONORABLE S. JAMES OTERO, UNITED STATES DISTRICT JUDGE

Victor Paul Cruz
Courtroom Clerk

Not Present
Court Reporter

**COUNSEL PRESENT FOR PLAINTIFF:**

Not Present

**COUNSEL PRESENT FOR DEFENDANT:**

Not Present

========================================================================
**PROCEEDINGS (in chambers): ORDER GRANTING DEFENDANT'S MOTION TO DISMISS** [Docket No. 16]

This matter comes before the Court on Defendant City of Fillmore's ("Defendant") Motion to Dismiss for Lack of Jurisdiction and Failure to State a Claim ("Motion"), filed January 3, 2012. Plaintiff El Dorado Estates ("Plaintiff") filed an Opposition to Defendant's Motion ("Opposition") on January 13, 2012. On January 23, 2012, Defendant filed a Reply to Plaintiff's Opposition ("Reply"). The Court found this matter appropriate for disposition without oral argument and vacated the hearing scheduled for February 6, 2012. *See* Fed. R. Civ. P. 78(b). For the following reasons, the Court **GRANTS** Defendant's Motion.

I.   FACTUAL AND PROCEDURAL BACKGROUND

The First Amended Complaint ("FAC") alleges the following facts. Plaintiff owns a 302-space mobile home community, El Dorado Estates Mobile Home Park (the "Park"), located within the City of Fillmore. (FAC ¶ 8, Dec. 19, 2011, ECF No. 15.) In 2008, the Park's residents attempted to impose rent control at the Park. (FAC ¶ 9.) Plaintiff publicly discussed that it might respond to a rent control ordinance by lifting the Park's age restriction by a rule change without obtaining permission from Defendant or residents of the Park. (FAC ¶ 9.)

Instead of lifting the age restriction, Plaintiff decided to respond to the prospect of rent control by converting the Park to a resident-owned Park. (FAC ¶ 10.) In March 2009, Plaintiff filed a Conversion Project Application ("Application") to subdivide the Park into lots (the "Project") that it could sell to individual residents pursuant to California Government Code section 66427.5. (FAC ¶¶ 10-12.) The residents of the Park were advised of the potential subdivision and expressed concern that subdivision would lead to the conversion of the Park from a senior community to an all-age community. (FAC ¶ 13.)

Defendant's processing of Plaintiff's Application has been fraught with controversy. For two years Plaintiff's Application has been caught up in administrative proceedings. (FAC ¶¶ 12, 15-16, 23.)

**CASE NO.:** CV 11-07562 SJO (RZx)        **DATE:** March 9, 2012

Plaintiff has requested assistance from the California courts on more than one occasion. (FAC ¶¶ 15-16.) Defendant twice rejected Plaintiff's Application as incomplete and asked Plaintiff to provide more information that was not expressly required under section 66427.5. (FAC ¶ 15.) In response, Plaintiff filed a petition in Ventura County Superior Court. (FAC ¶ 15.) The court ordered Defendant to limit its considerations to those permitted by law. (FAC ¶ 16.)

After Defendant narrowed its criteria for Application completeness and Plaintiff complied with the remaining application requirements, Defendant finally accepted the Application. (FAC ¶ 17.) Defendant then issued a resolution conditionally approving the subdivision conversion provided that Plaintiff complies with local flood mitigation regulations and an environmental impact investigation yields favorable results under the California Environmental Quality Act ("CEQA"). (FAC ¶¶ 17, 20; Mot. 7-8.) The decision to conduct an environmental study was based on Defendant's finding that if the subdivision conversion were approved, Plaintiff might lift the age restriction, which would have a significant impact on the environment. (Mot. 7.)

Plaintiff again petitioned the state court, requesting an order compelling Defendant to approve the Application without condition. (Mot. 8.) The court denied Plaintiff's petition, but set aside Defendant's resolution, finding that local regulations should not have been considered in the approval determination. (Mot. 8.) The court ruled that Defendant must conduct a new hearing on the merits of Plaintiff's Application, but that it could consider CEQA in its determination. (*See* Mot. 8-9.) Following the state court decision, the parties engaged in settlement negotiations, in which Defendant repeatedly sought an agreement from Plaintiff to maintain the Park as a senior community.

Plaintiff alleges that because of the residents' vehement and vocal opposition to the Park becoming an all-age property, Defendant has deliberately tried to delay or deny the subdivision conversion. (FAC ¶ 28.) Plaintiff asserts that Defendant's decision to conduct a CEQA investigation based on concern for the environment was mere pretext for Defendant's discriminatory motives. (FAC ¶ 29.) Plaintiff claims that Defendant deliberately delayed and conditioned Plaintiff's Application to placate the residents of the Park, who feared that subdivision was the first step toward making the Park an all-age community.

Based on the foregoing events, Plaintiff brought this action against Defendant, alleging a single claim for two violations of the Fair Housing Act ("FHA"). Plaintiff claims that Defendant "acted with the intent of coercing, interfering with and preventing [Plaintiff] from potentially making housing available for families." (FAC ¶ 28.) Plaintiff asserts that Defendant unlawfully discriminated against families in violation of the FHA, when Defendant: (1) "made unreasonable and illegal demands" in processing Plaintiff's Application; (2) imposed a pretextual environmental review under CEQA as a condition of approval of the conversion project[1]; and (3) offered to approve the

---

[1] Plaintiff alleges that Defendant's requirement that the Project be reviewed pursuant to CEQA is disingenuous.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

JS - 6

| | |
|---|---|
| **CASE NO.:** <u>CV 11-07562 SJO (RZx)</u> | **DATE:** <u>March 9, 2012</u> |

Project if Plaintiff would commit to maintain the Park's status quo as a senior community. (FAC ¶ 28.)

Defendant moves the Court to dismiss the FAC for lack of subject matter jurisdiction and failure to state a claim. (*See generally* Mot.) Defendant argues that Plaintiff lacks Article III standing to sue under the FHA and that Plaintiff's claim is not ripe for adjudication. (Mot. 10-18.) Defendant asserts that even if Plaintiff's claim is justiciable, Plaintiff fails to state a claim upon which relief can be granted because Defendant benefits from the Housing for Older Persons ("HOPA") exception under 42 U.S.C. § 3607(b)(2)(C)(iii). (Mot. 18-19.) In light of this exception, Defendant argues the instant action should be dismissed because Plaintiff has failed to state a claim under the FHA.

II. <u>DISCUSSION</u>

    A. <u>Legal Standard for 12(b)(1) Dismissal</u>

Article III, Section 2 of the United States Constitution limits the jurisdiction of the federal courts to "cases" or "controversies." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-60 (1992). It is axiomatic that federal courts are of limited jurisdiction, and a court presumes that it lacks jurisdiction over a claim "unless 'the contrary appears affirmatively from the record.'" *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 546 (1986) (quoting *King Bridge Co. v. Otoe County*, 120 U.S. 225, 226 (1887)). Lack of subject matter jurisdiction may be raised by any party at any time, and it is never waived: "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). The party seeking to invoke federal jurisdiction bears the burden of establishing that the court has jurisdiction. *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).

To establish the existence of a case or controversy within the meaning of Article III, the plaintiff must meet certain constitutional minima. Among these are the requirements that the plaintiff have standing to bring the action and that the case be ripe for adjudication. *Lujan*, 504 U.S. at 560; *Allen v. Wright*, 468 U.S. 737, 750 (1984). Standing is a threshold requirement in every federal case. *Warth v. Seldin*, 422 U.S. 490, 498 (1975). "[A] fundamental aspect of standing is that it focuses primarily on the party seeking to get [its] complaint before the federal court rather than on the issues [it] wishes to have adjudicated." *United States v. Richardson*, 418 U.S. 166, 174 (1974) (internal quotation marks omitted). Standing "is founded in concern about the proper - and properly limited role - of the courts in a democratic society." *Warth*, 422 U.S. at 498. "Those who do not possess Art[icle] III standing may not litigate as suitors in the courts of the United States." *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 475-76 (1982).

    B. <u>Justiciability of Plaintiff's Claims</u>

The Supreme Court has "established that the irreducible constitutional minimum of standing contains three elements." *Lujan*, 504 U.S. at 560. In order to have standing to sue in federal court, a plaintiff must meet the Article III requirements of injury, traceability, and redressability.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

JS - 6

**CIVIL MINUTES - GENERAL**

**CASE NO.:** CV 11-07562 SJO (RZx)   **DATE:** March 9, 2012

*See id.* at 560-61. First, the plaintiff must demonstrate the existence of an "injury in fact" - a "concrete and particularized" harm that is "actual or imminent, not conjectural or hypothetical." *Id.* at 560 (internal quotation marks omitted). "Second, there must be a causal connection between the injury and the conduct complained of - the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court.'" *Id.* at 560-61 (alteration in original) (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976)). Third, the injury must be redressable, meaning that the relief sought must be substantially likely to remedy the alleged harm and within the court's power to grant. *Vt. Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 771 (2000). In *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982), the Supreme Court concluded that standing "extend[s] to the full limits of Art[icle] III" for claims brought under the FHA. *Id.* at 372. If any of the three elements is missing from Plaintiff's claim, the Court is without jurisdiction and must dismiss the case.

    1.    <u>Injury-in-fact</u>

Under 42 U.S.C. § 3604, it is unlawful:

> (a) To refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin.
>
> (b) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin.

42 U.S.C. § 3604(a)-(b). Section 3604(a)-(b) operates in conjunction with 42 U.S.C. § 3617, which provides:

> It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title.

42 U.S.C. § 3617. Any "aggrieved person" can bring a complaint under the FHA. 42 U.S.C. § 3613. The FHA provides a broad definition for "aggrieved person." An "'[a]ggrieved person' includes any person who[:] (1) claims to have been injured by a discriminatory housing practice; or (2) believes that such person will be injured by a discriminatory housing practice that is about to occur." *Id.* § 3602(I). "The phrase 'is about to occur' applies to a number of situations in which it is clear to a person that, if he or she takes an action, he or she will be subjected to a

**CIVIL MINUTES - GENERAL**

| | |
|---|---|
| **CASE NO.:** CV 11-07562 SJO (RZx) | **DATE:** March 9, 2012 |

discriminatory act which will result in an injury." Preamble II, 24 C.F.R. ch. 1, subch. A, app. 1, 54 Fed. Reg. 3232-01, 3238 (Jan. 23, 1989). Consistent with *Lujan*, standing under the FHA does not require an aggrieved person to first suffer an injury before bringing a claim under the statute if the discriminatory act is imminent. 42 U.S.C. § 3602(i)(2); *Lujan*, 504 U.S. at 560.

Section 3602 does not provide a concrete definition for "injury." Traditionally, injuries arise in claims under the FHA where a plaintiff has been denied a housing opportunity as a result of a defendant's discrimination. *See, e.g., Keith v. Volpe*, 858 F.2d 467 (9th Cir. 1988). An injury is not as readily identifiable - and thus, standing issues arise - where the plaintiff alleges an injury as a result of discrimination against third persons. A claim is properly asserted under the FHA where a plaintiff can demonstrate that a defendant's discrimination against third persons resulted in a "genuine[] injury" to the plaintiff. *Gladstone Realtors v. Vill. of Bellwood*, 441 U.S. 91, 103 n.9 (1979). Such injuries include, but are not limited to, economic injuries. *See id.* at 111-12 (recognizing an injury where discrimination resulted in loss of "social and professional benefits of living in an integrated society").

Plaintiff claims that Defendant has stalled and continues to stall the approval of Plaintiff's Project in order to prevent Plaintiff from lifting the Park's age restriction.[2] (*See generally* FAC.) Plaintiff argues that Defendant's conduct gives rise to a claim under § 3604 of the FHA because Defendant is motivated by an intent to discriminate against third persons on the basis of their familial status. (FAC ¶ 29.) Plaintiff asserts that indicia of Defendant's intent include making "unreasonable and illegal demands in processing [Plaintiff's Application], imposing illegal and prohibitively costly conditions," and subjecting approval of Plaintiff's Application to an environmental review under CEQA. (FAC ¶ 28.) Plaintiff avers that Defendant's concern with the Project's environmental impact is nothing more than a "pretext[] intended only to serve the purposes [sic] of preventing the Park from ever becoming all age." (FAC ¶ 29.) Plaintiff contends that Defendant's behavior is injurious because it prevents Plaintiff from "**potentially** making housing available for families." (FAC ¶ 28 (emphasis added).)

Defendant argues that it is not in violation of § 3604(a) or (b) because Plaintiff has not suffered an injury. (Mot. 11.) Defendant maintains that Plaintiff has suffered no injury because: (1) Plaintiff has not lifted the Park's age restriction and demonstrates no intention of doing so in the future (Mot. 3, 11-12); (2) as admitted by Plaintiff, the right to lift the Park's age-restricted status is within Plaintiff's certain control under California law and is independent of Plaintiff's ability to subdivide and convert the Park (Mot. 3, 11); (3) Defendant has not yet conducted an assessment under CEQA and thus has not denied Plaintiff's Application and Project (Mot. 12); and (4) asking for reassurances that the Park will maintain the status quo does not amount to discrimination or an injury (Mot. 12). Rather, Defendant asserts that Plaintiff's allegation that Defendant is interfering

---

[2] To the extent Plaintiff's FAC alleges that Defendant is in violation of California law, such issues are currently before a state tribunal and will not be considered unless those violations give rise to a claim under the FHA.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**JS - 6**

**CIVIL MINUTES - GENERAL**

**CASE NO.: CV 11-07562 SJO (RZx)**   **DATE: March 9, 2012**

with Plaintiff's right to lift the Park's age restriction is inconsistent in light of Plaintiff's admission that the right to lift the age restriction is within Plaintiff's certain control.[3] (Mot. 11-12.)

Taking the facts in light most favorable to Plaintiff - that Plaintiff cannot potentially offer housing to families because Defendant has attached "illegal and prohibitively costly conditions" to Plaintiff's Application and Project - Plaintiff lacks standing to bring a claim under the FHA. (FAC ¶ 28.) Plaintiff lacks standing because Plaintiff has not suffered an injury, nor is any injury about to occur. Plaintiff conflates its right to lift the Park's age restriction under California Civil Procedure Code section 798 with its ability to subdivide and convert the Park under California Government Code section 66427.5. Plaintiff's attempt to style its claim as a violation of § 3604(a) and (b) by alleging discrimination against persons based on their familial status does not stand.

Any interference by Defendant with Plaintiff's Application and Project does not give rise to a claim under the FHA because Plaintiff's inability to "**potentially** make housing available for families" is not an injury. (FAC ¶ 28 (emphasis added).) Notwithstanding the Supreme Court's instruction that "claims brought under the Fair Housing Act are to be judged under a very liberal standing requirement," Plaintiff must still meet the minimum requirements under Article III. *Harris v. Itzhaki*, 183 F.3d 1043, 1049 (9th Cir. 1999). Plaintiff must still demonstrate that Defendant's conduct caused Plaintiff a "distinct and palpable injury." *Id.* at 1050. Under the law, injuries that are "conjectural or hypothetical" are not sufficient to confer standing. *Lujan*, 504 U.S. at 560 (internal quotation marks omitted). Although Plaintiff's right to lift the Park's age restriction is a legally cognizable interest, "the 'injury in fact' test requires more than an injury to a cognizable interest." *Lujan*, 504 U.S. at 563. The test requires that the party seeking relief be injured or threatened by imminent injury. *See id.* In *Lujan*, the Supreme Court held that there was no injury where the plaintiffs intended to observe various threatened species in their natural habitat some day, but where the plaintiffs otherwise had no "current plans" to do so. *Id.* at 563-64 ("Such 'some day' intentions - without any description of concrete plans, or indeed even any specification of *when* the some day will be - do not support a finding of the 'actual or imminent' injury that our cases require.").

Plaintiff's alleged injury in the instant action is analogous to the injury alleged in *Lujan*. Here, there is an injury to Plaintiff's cognizable interest (Plaintiff's ability to lift the Park's age restriction). However, this injury does not harm Plaintiff. Plaintiff merely asserts that Defendant's interference prevents Plaintiff from "**potentially** making housing available for families." (FAC ¶ 28 (emphasis added).) At no point does Plaintiff plead that it has sought to make housing available for families in the past by lifting the Park's age restriction but was prevented from doing so by Defendant's

---

[3] Defendant also offers findings made in the state court proceeding - that Plaintiff contributed to the processing delay by submitting an incomplete application in the first instance - to support its argument that it has not unduly interfered with Plaintiff's Application. (Mot. 12.) Consideration of this argument is not necessary to resolve Plaintiff's claim under the FHA. As such, the Court will not comment on the findings made in the pending state court action.

Case 2:11-cv-07562-SJO-RZ Document 20 Filed 03/09/12 Page 7 of 9 Page ID #:364

JS - 6

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:** <u>CV 11-07562 SJO (RZx)</u>  **DATE:** <u>March 9, 2012</u>

purposeful interference. (*See generally* FAC; Opp'n.) Nor does Plaintiff claim that it currently has undertaken to lift the Park's age restriction but Defendant is unlawfully thwarting those efforts. (*See generally* FAC; Opp'n.) Furthermore, Plaintiff does not allege any concrete intention of lifting the Park's age restriction in the near future. (*See generally* FAC; Opp'n.)

Indeed, Plaintiff even states that it opted to subdivide and convert the Park **instead** of lifting the Park's age restriction. (FAC ¶¶ 9-10 (emphasis added).) Plaintiff is asserting a violation of a right that Plaintiff has not exercised, is not exercising, and does not intend to exercise. Essentially, Plaintiff claims that Defendant is preventing Plaintiff from doing something that it had no intention of doing in the first place. Further, it is unclear how Defendant's actions, even viewed in the light most favorable to Plaintiff, are preventing Plaintiff from lifting the Park's age restriction. Defendant may be preventing Plaintiff from subdividing, but Plaintiff's right to subdivide - to the extent it is even a right - does not arise under the FHA and is the proper subject of the pending state court case. Thus, Plaintiff has suffered no injury.

Although the FHA "extend[s] to the full limits of Art[icle] III" and thus permits a claim to be brought where an injury is about to occur, Plaintiff still lacks standing because Plaintiff is not vulnerable to an imminent injury. *Coleman*, 455 U.S. at 372. Plaintiff's claim of imminent injury requires this Court to assume that Defendant will deny Plaintiff's Project following an assessment under CEQA. Furthermore, it requires this Court to assume that Defendant will deny the Project if Plaintiff lifts the Park's age restriction during the approval process. No such assumptions are warranted here because, as Defendant states, assessment under CEQA "may show the Project will be unlikely to have any environmental impact." (Mot. 15.) Thus, it is not apparent to this Court that an injury is about to occur because Defendant has not yet assessed the Project's environmental impact under CEQA.

Absent a denial of Plaintiff's Application and Project, Plaintiff's injury is not ripe for adjudication. "The Article III case or controversy requirement limits federal courts' subject matter jurisdiction by requiring, inter alia, that plaintiffs have standing and that claims be ripe for adjudication." *Chandler*, 598 F.3d at 1121 (internal quotation marks omitted). The doctrine of ripeness addresses concerns involving "uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all." *Id.* at 1122-23 (internal quotation marks omitted). The denial of Plaintiff's Project is one such contingent future event. Another such event is Plaintiff lifting the age restriction and demonstrating that families want to live at the Park. Plaintiff has not (because Plaintiff cannot) sufficiently establish that Defendant's assessment under CEQA will result in denial of Plaintiff's Project. Because Plaintiff has not suffered an injury and any future injury alleged is speculative, Plaintiff is not an aggrieved person as defined under the FHA. Thus Plaintiff's claim is unripe for adjudication.

   2. <u>Traceability</u>

The second element of standing requires that the plaintiff be able to trace the "injury and conduct complained of" to the alleged actions of the defendant. *Lujan*, 504 U.S. at 560. An injury resulting from an absent third party's actions is not sufficient. *See id.*

**CASE NO.:** <u>CV 11-07562 SJO (RZx)</u>   **DATE:** <u>March 9, 2012</u>

The approval of Plaintiff's Application depends on the lifting of the Park's age restriction only in so far as Plaintiff continues to intertwine the two issues. By Plaintiff's own admission, the right and ability to lift the Park's age restriction belongs solely to Plaintiff as provided by California Civil Procedure Code section 798. (FAC ¶ 9.) Plaintiff expressly states that "permission of [Defendant] or the residents of the Park" is not necessary to exercise this right. (FAC ¶ 9.) On the other hand, Plaintiff's right to change the Park's age restricted status is independent of Plaintiff's ability to subdivide and convert the Park, which is provided for under California Government Code section 66427.5. (FAC ¶ 11.) Hence, Plaintiff's inability to subdivide and convert the Park does not affect or destroy Plaintiff's right to change the Park's age-restricted status.

Even if Defendant denies Plaintiff's Project, Plaintiff's right to lift the Park's age restriction would remain intact. Defendant's alleged efforts to stall Plaintiff's Application and Project in no way prevent Plaintiff from lifting the Park's age restriction under California Civil Procedure Code section 798. Indeed, the only thing preventing Plaintiff from lifting the Park's age restriction and offering housing to families is Plaintiff's own decision not to exercise its right. The Court notes that if, as Plaintiff claims, it can lift the Park's age restriction through a simple rule change at any time, doing so would arguably render familial status irrelevant to the Application approval process. The environmental impact of converting the Park to an all-ages community would no longer have a causal link to Plaintiff's Project. Thus, it is clear that any current link is entirely within Plaintiff's control. Because Plaintiff has not suffered a legally cognizable injury (nor is such an injury about to occur), there is no injury to trace to Defendant. To the extent Plaintiff has been harmed at all, Plaintiff's injury is suffered at its own hand.

        3.      <u>Redressability</u>

The third and final element necessary to establish standing under Article III is redressability. The party invoking the protection of the court must demonstrate that there is a "substantial likelihood that the requested relief will remedy the alleged injury." *Stevens*, 529 U.S. at 771 (internal quotation marks omitted).

Plaintiff's FAC requests the following relief: (1) compensatory, general, special, and punitive damages; (2) temporary, provisional, and permanent injunctive relief against consideration or reliance by Defendant on an actual or potential change from senior to all age status in the processing of the subdivision application of Plaintiff; and (3) attorney's fees and costs plus interest. (FAC, Prayer for Relief.)

This Court cannot redress Plaintiff's injury because, as examined above, Plaintiff is not injured. Nor is an injunction appropriate because Plaintiff's impending injury is speculative and otherwise hypothetical. Furthermore, to the extent Plaintiff is voluntarily choosing not to exercise its right to lift the age restriction under California Civil Procedure Code section 798, it is not within the discretion of this Court to mandate that Plaintiff do so. As such, redressability of Plaintiff's "injury" is not within the Court's certain control.

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

CASE NO.: <u>CV 11-07562 SJO (RZx)</u>          DATE: <u>March 9, 2012</u>

III.     <u>RULING</u>

For the foregoing reasons the Court finds that Plaintiff does not have Article III standing to sue under the FHA. Because the Court lacks jurisdiction over this action, Defendant's Motion to Dismiss is **GRANTED** and Plaintiff's First Amended Complaint is **DISMISSED WITHOUT LEAVE TO AMEND.** This action shall close.

IT IS SO ORDERED.